Ex parte Earnest F. CROCKER, Relator.

No. 1465.

Court of Civil Appeals of Texas, Tyler.

Nov. 20, 1980.

Wm. Mark Withers, Dale Long, Tyler, for appellant.

Troy Smith, Texas Dept. of Human Resources, Tyler, for appellee.

McKAY, Justice.

This is an original proceeding on a writ of habeas corpus. Relator was imprisoned by order of the 321st District Court of Smith County for failure to pay child support in accordance with a divorce decree issued by that court. Application for the writ was granted on October 9, 1980, and relator was

ordered released upon posting of bond pending a hearing on the writ.

Relator was divorced from respondent Carol Jean Crocker on May 14, 1979, and was ordered to pay child support for the couple's two sons in the amount of $50.00 per week beginning May 21, 1979.

A motion for contempt was filed on September 24, 1979, against relator for his violation of the support order. After a hearing on the cause, a contempt order was entered on January 10, 1980. A fine of $250 was assessed, and relator was ordered confined in the Smith County jail for 60 days. Issuance of a commitment order and the payment of the fine were suspended on three conditions:

(1) That relator pay $50 per week as ordered by the original decree when such payments became due;

(2) That relator pay $200 on or before November 30, 1979, to be applied on the arrearage which had accrued;

(3) That relator pay an additional $10 per week beginning December 10, 1979, until such arrearage was paid in full.

The order further provided that payments were to be made into the registry of the court, and if not paid in the amount and on the date required, the court would, without further notice or hearing, issue a commitment order and capias for the arrest of relator.

Obviously it would have been impossible for relator to perform in strict accordance with this order, since it was not entered until *after* payments had already become due. However, on July 30, 1980, a motion to order commitment on the January order was filed. As of that time, relator had paid $610 into the court pursuant to order, but was still in arrears in the amount of $1,680. The trial court granted the motion without a hearing, and another order was issued on August 18, 1980, which read that "All commitments, writs, attachments and other process necessary for the enforcement of the referenced order against the said Earnest F. Crocker be issued forthwith by the clerk of this court." No terms of the original order were included in this order. A commitment order was issued on August 20, 1980, and relator was taken into custody on September 24, 1980.

In his first point of error, relator attacks the August 18, 1980, order on due process grounds claiming that he was not given proper notice or an opportunity to be heard before the commitment order was issued. Relator argues that the original contempt order entered in January was conditional and that another hearing should have been held prior to his imprisonment in August to prove that the conditions set forth had not been met.

Relator is correct in his assertion that the law in *Ex parte Hart*, 520 S.W.2d 952 (Tex. Civ.App.—Dallas 1975, no writ) is applicable to the case at hand. In *Hart*, imprisonment and payment of a fine under the original contempt order were conditioned on relator's payment of current child support and upon the additional tender of $10 per week to be applied to arrearage. As in this case, the order provided for the future commitment of relator upon failure to make payments as ordered. The commitment was to be issued without further notice or hearing upon an affidavit of petitioner. (In the present case, affidavit was made by the court clerk).

The court in *Hart* held at page 953 as follows:

> We hold that an order finding a person in contempt but suspending punishment on condition of compliance with the court's order, provides no authority in itself for arrest and confinement. A subsequent hearing to determine breach of the condition and a subsequent unconditional commitment is necessary.

*Accord, Ex parte Gonzales*, 606 S.W.2d 5 (Tex.Civ.App.—Amarillo 1980); *Ex parte Sauser*, 554 S.W.2d 239, 241 (Tex.Civ.App.—Dallas 1977, no writ); *See Anderson v. Burleson*, 583 S.W.2d 467 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ); *Ex parte Lee*, 568 S.W.2d 689, 691 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ); *Ex parte Pappas*, 562 S.W.2d 865, 867 (Tex.Civ.App.—Houston [1st Dist.] 1977, no writ).

The constitutional grounds for these decisions are sound, it being well settled that imprisonment for contempt without notice and hearing is a denial of due process. *Ex parte Herring,* 438 S.W.2d 801, 803 (Tex.1969); *Ex parte Davis,* 161 Tex. 561, 344 S.W.2d 153, 156 (Tex.1961). While it is true that relator was afforded notice and a hearing prior to the issuance of the January contempt order, seven months had passed before the commitment order was issued in August. Had the trial court acted immediately on the original order, due process requirements would have been met; however, the trial court chose not to punish relator unless he breached certain conditions at some later date. Since punishment was conditioned on further acts of default, due process requirements of notice and hearing should have been met before relator was imprisoned. *Ex parte Sauser, supra.*

Respondent argues that the contempt order was not conditional but final and therefore no further hearing was necessary to enforce it. This contention is without merit because the order was made conditional by its own terms:

> It is however further ORDERED that issuance of a commitment for such confinement and fine be suspended upon the following *conditions...*

This order had no present effect on relator other than to enumerate what he had to do to avoid punishment in the *future.* The sword of Damocles continued to dangle above relator's head and he alone had the power to prevent the thread on which it hung from breaking. Whether relator would make the required payments could not be predicted at the time of the order, and "a judgment which purports to declare the rights of the parties to become effective only upon the happening of a future event or contingency the occurrence of which is wholly uncertain is not a final judgment." 4 McDonald, Texas Civil Practice § 17.03.3 (rev.1971).

We also reject respondent's argument that a distinction should be drawn as to whose affidavit (whether that of an ex-spouse or the court clerk) alleges failure to make payments under the original order. The determining factor is not the probable veracity of the affiant, but rather the fact that relator was not given an opportunity to answer the allegations, either to prove them false or to show that he was involuntarily unable to make the required payments.

Relator is therefore discharged.